# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP818 |

| | |
|---|---|
| COMPLETE TITLE: | Southwest Airlines Co. and Airtran Airways, Inc., |
| | Plaintiffs-Appellants-Petitioners, |
| | v. |
| | State of Wisconsin Department of Revenue, |
| | Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 391 Wis. 2d 649,943 N.W.2d 355
(2020 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 8, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 23, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Richard G. Niess |

JUSTICES:
ANN WALSH BRADLEY, J., delivered to majority opinion for a unanimous Court.
NOT PARTICIPATING:

ATTORNEYS:
For the plaintiffs-appellants-petitioners, there were briefs filed by *Douglas A. Pessefall, Don M. Millis, Karla M. Nettleton,* and *Reinhart Boerner Van Deuren S.C.,* Milwaukee. There was an oral argument by *Douglas A. Pessefall.*

For the defendant-respondent, there was a brief filed by *Bran P. Kennan*, assistant attorney general; with whom on the brief was *Joshua L. Kaul* attorney general. There was an oral argument by *Brian P. Kennan.*

2021 WI 54

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2019AP818
(L.C. No. 2017CV1965)

STATE OF WISCONSIN           :       IN SUPREME COURT

Southwest Airlines Co. and Airtran Airways, Inc.,

      Plaintiffs-Appellants-Petitioners,

  v.

State of Wisconsin Department of Revenue,

      Defendant-Respondent.

**FILED**

**JUN 8, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ANN WALSH BRADLEY, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. The petitioners, Southwest Airlines and AirTran Airways (collectively, Southwest), seek review of an unpublished opinion of the court of appeals affirming the circuit court's determination that Southwest does not qualify for the "hub facility" property tax exemption.[1]

---

[1] Southwest Airlines Co. v. DOR, No. 2019AP818, unpublished slip op. (Wis. Ct. App. Mar. 3, 2020) (affirming the order of the circuit court for Dane County, Richard G. Niess, Judge).

Specifically, Southwest contends that under a "strict but reasonable" interpretation of Wis. Stat. § 70.11(42)(a)2.a. (2017-18),[2] it is entitled to the exemption for both the 2013 and 2014 tax assessments.

¶2 The hub facility provision exempts from property taxes all property of an air carrier company if the air carrier company "operated at least 45 common carrier departing flights each weekday in the prior year" from a facility at a Wisconsin airport. Southwest argues that it is entitled to the exemption despite admitting that it did not operate at least 45 departing flights on each and every weekday of the subject years.

¶3 Nevertheless, Southwest advances that under a "strict but reasonable" reading of the statute, it should be given an allowance for holidays and days with bad weather when it did not operate 45 departing flights. It further asserts that it is entitled to the hub facility exemption if it operated an average of over 45 flights each weekday in the subject year.

¶4 We conclude that Southwest is not entitled to the hub facility exemption for either the 2013 or 2014 property tax assessment. The plain language of the statute requires that an air carrier company operate 45 departing flights on each weekday without exception, and Southwest admittedly did not meet this requirement.

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

2

¶5 Accordingly, we affirm the decision of the court of appeals.

I

¶6 In May of 2011, Southwest completed an acquisition of AirTran Airways. Despite the merger the two airlines continued to file separate air carrier reports with the Department of Revenue (DOR) for the 2013 property tax assessment (covering January 1, 2012, to December 31, 2012) and the 2014 property tax assessment (covering January 1, 2013, to December 31, 2013). For the two years at issue, Southwest paid $4,177,574 in property tax.

¶7 At the time they filed their reports, neither Southwest nor AirTran claimed the hub facility exemption. Likewise, neither submitted any flight data along with their reports.

¶8 During the course of an audit conducted by DOR, Southwest came to believe that it may qualify for the hub facility exemption. Accordingly, on April 6, 2015, it submitted flight information to DOR. However, the flight information was provided in the form of scheduled departures, not actual departures.

¶9 Southwest followed up its submission of the flight data with a request pursuant to Wis. Stat. § 76.075[3] that DOR

---

[3] Wisconsin Stat. § 76.075, entitled "Adjustments of assessments," provides in relevant part:

> Within 4 years after the due date, or extended due date, of the report under s. 76.04, any person subject
>
> (continued)

3

make adjustments to the data Southwest had previously submitted. Through the request, Southwest sought to consolidate the reports previously filed by Southwest and AirTran. The request was "accompanied by workpapers and flight records to support a claim for the hub facility exemption."

¶10 DOR denied Southwest's request. It gave three main reasons for the denial. First, DOR determined that Wis. Stat. § 76.075 was not the proper mechanism for seeking the hub facility exemption. Second, DOR concluded that Southwest's request for the hub facility exemption was untimely.

¶11 Finally, as most relevant here, DOR denied the exemption on the basis that Southwest failed to establish that it met the statutory 45-departing-flights threshold. Even assuming that Southwest and AirTran could pool their flights together and that scheduling a flight is the equivalent of

---

to taxation under this subchapter may request the department to make, or the department may make, an adjustment to the data under s. 76.07(4g) or (4r) submitted by the person. If an adjustment under this section results in an increase in the tax due under this subchapter, the person shall pay the amount of the tax increase plus interest on that amount at the rate of 1 percent per month from the due date or extended due data of the report under s. 76.04 until the date of final determination and interest at the rate of 1.5 percent per month from the date of final determination until the date of payment. If an adjustment under this section results in a decrease in the tax due under this subchapter, the department shall refund the appropriate amount plus interest at the rate of 0.25 percent per month from the due date or extended due date under s. 76.04 until the date of refund.

"operating" a flight, DOR determined that there were still four weekdays for 2013 and 91 weekdays for 2014 on which Southwest did not schedule 45 departing flights.

¶12 Southwest sought judicial review of DOR's determination in Dane County circuit court pursuant to Wis. Stat. § 76.08(1).[4] Both Southwest and DOR filed motions for summary judgment. The circuit court granted DOR's motion for summary judgment and denied Southwest's. It concluded that "on the undisputed facts, the airlines did not satisfy the statutory requirements in either tax year to qualify for the exemption."

¶13 Specifically, the circuit court determined that Southwest did not meet the 45-departing-flight requirement. It rejected Southwest's argument that in order to qualify for the hub facility exemption an airline need only schedule departing flights and not have them actually depart. The circuit court observed that "[a]s anyone who flies commercial airlines on a regular basis can unfortunately attest, a scheduled flight is not always a 'departing flight.'" Further, determining that there was no textual support for Southwest's reading of Wis.

_____

[4] In relevant part, Wis. Stat. § 76.08(1) sets forth:

> Any company aggrieved by the assessment or adjustment of its property thus made may have its assessment or adjustment redetermined by the Dane County circuit court if within 30 days after notice of assessment or adjustment is mailed to the company under s. 76.07(3) an action for the redetermination is commenced by filing a summons and complaint with that court, and service of authenticated copies of the summons and complaint is made upon the department of revenue.

5

Stat. § 70.11(42)(a)2.a., the circuit court found unpersuasive Southwest's argument that it need only average 45 departing flights each weekday.

¶14 Southwest appealed and the court of appeals affirmed the circuit court's decision. Southwest Airlines Co. v. DOR, No. 2019AP818, unpublished slip op. (Wis. Ct. App. Mar. 3, 2020). Following the same rationale as the circuit court, the court of appeals concluded that "based on the language of the statute as currently written and the undisputed facts of this case, the Airlines cannot prevail." Id., ¶16. Southwest petitioned for this court's review.

II

¶15 In this case we are called upon to review the court of appeals' determination that the circuit court properly granted summary judgment to DOR. We review a grant of summary judgment independently of the decisions rendered by the circuit court and court of appeals, applying the same methodology as the circuit court. Shugarts v. Mohr, 2018 WI 27, ¶17, 380 Wis. 2d 512, 909 N.W.2d 402. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

¶16 In our review, we are required to interpret Wis. Stat. § 70.11(42)(a)2.a. Statutory interpretation presents a question of law we likewise review independently of the determinations of the circuit court and court of appeals. Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, 2018 WI 19, ¶28, 380 Wis. 2d 60, 908 N.W.2d 797.

6

III

¶17 Southwest claims it is entitled to the hub facility exemption provided in Wis. Stat. § 70.11(42). Pursuant to this exemption, "Property owned by an air carrier company that operates a hub facility in this state, if the property is used in the operation of the air carrier company[,]" is exempted from general property taxes. § 70.11(42)(b).

¶18 There is no dispute that Southwest is an "air carrier company," which is defined by statute as "any person engaged in the business of transportation in aircraft of persons or property for hire on regularly scheduled flights." Wis. Stat. § 70.11(42)(a)1. The dispute focuses on whether Southwest operates a "hub facility" in Wisconsin.

¶19 As relevant here, a "hub facility" is defined as follows:

> A facility at an airport from which an air carrier company operated at least 45 common carrier departing flights each weekday in the prior year and from which it transported passengers to at least 15 nonstop destinations, as defined by rule by the department of revenue, or transported cargo to nonstop destinations, as defined by rule by the department of revenue.

Wis. Stat. § 70.11(42)(a)2.a.[5]

---

[5] The statute includes an additional definition for a hub facility, which Southwest does not claim it meets and thus is not relevant here. That additional definition is:

> An airport or any combination of airports in this state from which an air carrier company cumulatively operated at least 20 common carrier departing flights each weekday in the prior year, if the air carrier

(continued)

7

¶20 Southwest concedes that it did not operate at least 45 departing flights on six days for the 2013 property tax assessment.[6] The record further does not support an assertion that Southwest operated 45 departing flights each weekday for the 2014 property tax assessment. Indeed, Southwest concedes the point by making no argument that it did so and asserts only that it scheduled an average of 46.28 departing flights each weekday during this period. Despite these concessions, Southwest argues that it should still be entitled to the hub facility exemption.[7]

---

company's headquarters, as defined by rule by the department of revenue, is in this state.

Wis. Stat. § 70.11(42)(a)2.b.

[6] Southwest concedes that there were three weekdays on which it scheduled more than 45 flights but flew fewer than 45 flights, and three weekdays on which it both scheduled and flew fewer than 45 flights. The days on which Southwest scheduled more than 45 flights but flew fewer were October 29 and 30, 2012, on which Hurricane Sandy forced the cancellation of many flights across the country, and December 20, 2012, on which there was 2.16 inches of rain or melted snow and 2.8 inches of snow, ice pellets, or hail on the ground. The days on which Southwest both scheduled and flew fewer than 45 flights were November 22, 2012 (Thanksgiving), November 23, 2012 (Black Friday), and December 25, 2012 (Christmas).

[7] For purposes of our discussion, we assume without deciding that Southwest and AirTran can combine their flight totals for the subject years. We further assume without deciding that an air carrier company may retroactively claim the hub facility exemption through the data adjustment procedure provided by Wis. Stat. § 76.075.

8

¶21 Specifically, it contends that we should read the statute in a "strict but reasonable" manner, and that under such a reading we should forgive Southwest for the days it did not meet the 45-departing-flight threshold due to holidays and weather. It further contends that it is entitled to the exemption if it averaged 45 departing flights per weekday in the subject year.

¶22 In evaluating Southwest's arguments, we must interpret Wis. Stat. § 70.11(42)(a)2.a. As a starting point, statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not inquire further. Id.

¶23 "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46.

¶24 Tax exemption statutes are strictly construed against granting an exemption. Covenant Healthcare Sys., Inc. v. City of Wauwatosa, 2011 WI 80, ¶22, 336 Wis. 2d 522, 800 N.W.2d 906; Wis. Stat. § 70.109. The burden is on the party seeking the exemption to prove its entitlement and any ambiguity is resolved in favor of taxation. Columbus Park Hous. Corp. v. City of

9

_Kenosha_, 2003 WI 143, ¶11, 267 Wis. 2d 59, 671 N.W.2d 633; § 70.109. Thus, taxation is the rule and exemption is the exception. _Columbus Park Hous. Corp._, 267 Wis. 2d 59, ¶11.

¶25 Although we are to apply a strict construction, this does not mean that we need apply the narrowest possible construction or an unreasonable construction. _Covenant Healthcare Sys., Inc._, 336 Wis. 2d 522, ¶32 (citing _Columbia Hosp. Ass'n v. City of Milwaukee_, 35 Wis. 2d 660, 668, 151 N.W.2d 750 (1967)). We therefore apply a "strict but reasonable" interpretation to a tax exemption statute. _Covenant Healthcare Sys., Inc._, 336 Wis. 2d 522, ¶22.

¶26 "The party claiming the exemption must show the property is clearly within the terms of the exception and any doubts are resolved in favor of taxability." _Kickers of Wis., Inc. v. City of Milwaukee_, 197 Wis. 2d 675, 680, 541 N.W.2d 193 (Ct. App. 1995) (citation omitted). In other words, all presumptions are against tax exemption, and an exemption should not be extended by implication. _Id._ (citation omitted).

¶27 Guided by these principles, we are unpersuaded by either of Southwest's arguments. Reading a statute "strictly but reasonably" still does not allow us to read language into the statute that is not present. Both of Southwest's arguments

10

impermissibly ask us to read language into Wis. Stat. § 70.11(42)(a)2.a.[8]

¶28 Initially, we must reject Southwest's argument that it is entitled to the hub facility exemption for 2013 because it substantially complied with the hub facility statute by flying the requisite number of flights each weekday with the exception of bad weather days and holidays. Wisconsin Stat. § 70.11(42)(a)2.a. requires that, in order to be entitled to the hub facility exemption, an air carrier company must "operate[] at least 45 common carrier departing flights each weekday" during the subject year. The unambiguous plain language of the statute does not provide any exceptions for bad weather or holidays.

¶29 It would be error for us to read into the statute an exception that the legislature has not set forth. Dawson v. Town of Jackson, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write."). While this principle

---

[8] DOR additionally argues that the voluntary payment doctrine prevents Southwest from receiving a refund of its previously paid property taxes. "The voluntary payment doctrine places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment." Putnam v. Time Warner Cable of Se. Wis., Ltd. P'Ship, 2002 WI 108, ¶13, 255 Wis. 2d 447, 649 N.W.2d 626. Because Southwest is not entitled to the hub facility exemption under the plain language of the statute, we need not address the applicability of the voluntary payment doctrine.

is applicable in all cases, its import is heightened in a tax exemption case, as precedent indicates that tax exemptions are to be strictly construed and not extended by implication. See Covenant Healthcare Sys., Inc., 336 Wis. 2d 522, ¶22; Kickers of Wis., Inc., 197 Wis. 2d at 680. The strict construction with which we interpret tax exemption statutes further means that we cannot disregard Southwest's days of noncompliance as de minimis.

¶30 The legislature's choice of language in Wis. Stat. § 70.11(42)(a)2.a. further compels the rejection of this argument. The use of the terms "operated" and "departing flight" indicate that an air carrier company must do more than merely schedule a flight in order for that flight to count toward the exemption. The flight must actually be "operated" and must "depart."[9] As the circuit court observed, "[a]s anyone

_____

[9] This conclusion is further bolstered with a look to related statutes. For example, there are numerous other subsections of Wis. Stat. § 70.11 where the word "operate" is used. The additional instances of the word all suggest that "operate" means that some specified activity must actually be done. See, e.g., § 70.11(25) (exempting from property taxation property operated for the purpose of medical and surgical research); § 70.11(28) (exempting property owned and operated by a humane society); § 70.11(29m) (exempting property operated as a theater if other requirements are met).

Further, other aviation-related statutes indicate that "operate" must mean more than "schedule." Specifically, Wis. Stat. § 78.55(5) defines a "general aviation fuel user" as a person "who is responsible for the operation of an aircraft at the time general aviation fuel is placed in the fuel supply tank of the aircraft while the aircraft is within this state." Such a definition also suggests that "operate" means that an activity must actually be done.

12

who flies commercial airlines on a regular basis can unfortunately attest, a scheduled flight is not always a 'departing flight.'"

¶31 Southwest's argument that it is entitled to the exemption for 2014 because it averaged over 45 flights per weekday in the subject year is similarly unpersuasive. The hub facility exemption statute sets as a prerequisite to the exemption that the air carrier company "operate[]" the minimum number of flights "each weekday" in the subject year. Southwest concedes, and the record reflects, that Southwest did not "operate" 45 flights, or even schedule 45 flights, on some weekdays in the subject period. Again, we decline to read into the statute an "average" route to the exemption that is not present in the plain language.

¶32 The legislature's use of the term "each weekday" further precludes the application of Southwest's "average" theory. This court has previously interpreted the word "each" as synonymous with "every." State ex rel. Pierce v. Kundert, 4 Wis. 2d 392, 395, 90 N.W.2d 628 (1958). Applying this understanding of the term, the plain language of Wis. Stat. § 70.11(42)(a)2.a. does not support aggregating the number of

13

flights for the year and calculating the average——the threshold must be met each individual weekday.[10]

¶33 Our conclusion is further buttressed by the legislature's use of the term "at least," which indicates that 45 flights is an absolute minimum floor. See Racine Educ. Ass'n v. WERC, 2000 WI App 149, ¶48, 238 Wis. 2d 33, 616 N.W.2d 504 (explaining that the words "at least" set a minimum level). Thus, under the plain language of Wis. Stat. § 70.11(42)(a)2.a.,

---

[10] Whether DOR granted the hub facility exemption to other airlines in the past is irrelevant to our analysis. Southwest contends that the exemption was extended to some airlines for the 2002 assessment despite the grounding of flights subsequent to the September 11, 2001 terrorist attacks. This argument is made in the context of an argument that DOR's treatment of Southwest in this case violates the uniformity clause of the Wisconsin Constitution. The uniformity clause provides that "[t]he rule of taxation shall be uniform." Wis. Const. art. VIII, § 1. Southwest contends that because airlines received the exemption for the 2002 assessment despite being grounded several days the prior year, that DOR's application of the hub facility exemption is arbitrary and results in non-uniform assessments.

We need not address this argument because the record before us in insufficient, as it does not include the necessary underlying data. For the same reason, we need not address Southwest's argument that it is the victim of a due process or equal protection violation. Further, Southwest's due process and equal protection arguments are undeveloped, and we generally do not address undeveloped arguments. State v. Gracia, 2013 WI 15, ¶28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87.

14

operating fewer than 45 flights on any weekday disqualifies an airline from the hub facility exemption.[11]

¶34 We thus conclude that Southwest is not entitled to the hub facility exemption for either the 2013 or 2014 property tax assessment. The plain language of the statute requires that an air carrier company operate 45 departing flights on each weekday without exception, and Southwest admittedly did not meet this requirement.

¶35 Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[11] To the extent Southwest argues that the hub facility exemption is too difficult to obtain, its remedy lies with the legislature and not this court. As set forth, under the plain language of the statute the legislature has drafted, Southwest is not entitled to the exemption.