**2024 WI 37**

# Supreme Court of Wisconsin



ROBERT F. KENNEDY, JR.,
*Petitioner-Appellant,*

*v.*

WISCONSIN ELECTIONS COMMISSION,
*Respondent-Respondent.*

No. 2024AP1872
Filed September 27, 2024

The Court entered the following order on this date:

This is a review of a circuit court order denying Robert F. Kennedy, Jr.'s request for a temporary injunction requiring the Wisconsin Elections Commission (WEC) to remove Kennedy as a candidate for President on the November 5, 2024 Wisconsin general election ballot. The case is before this court on bypass of the court of appeals pursuant to WIS. STAT. § (Rule) 809.60.

The facts relevant to this matter are as follows. On August 6, 2024, Kennedy and Nicole Shanahan submitted nomination papers and declarations of candidacy to WEC as independent candidates for President and Vice President in the November 2024 general election. On August 23, 2024, Kennedy sent a letter to WEC stating that he was "withdraw[ing] his candidacy from the 2024 United States Presidential Election" and requesting that his name not be printed on the ballot in Wisconsin. WEC considered Kennedy's request at an August 27, 2024 statutorily mandated meeting, at which WEC was required to certify the candidates to be placed on the ballot. *See* WIS. STAT. § 10.06(1)(i). The commissioners voted 5-1 to deny Kennedy's request to withdraw from the ballot based on WIS. STAT.

§ 8.35(1), which provides that "[a]ny person who files nomination papers and qualifies to appear on the ballot may not decline nomination. The name of that person shall appear upon the ballot except in case of death of the person." WEC included Kennedy's name on the certified list of candidates for President.

On September 3, 2024, Kennedy filed a petition for judicial review of WEC's decision under WIS. STAT. § 227.52 in the Dane County circuit court. Kennedy also immediately filed a motion for a temporary injunction that would compel WEC to remove his name from the ballot. After receiving briefing from the parties and declarations from WEC staff and various municipal clerks, and after having afforded Kennedy an evidentiary hearing at his request, the circuit court issued an oral ruling denying the temporary injunction motion on September 16, 2024. The circuit court memorialized its oral ruling in a written order that same day.

On September 17, 2024, Kennedy filed a petition for leave to appeal the denial of his motion for a temporary injunction, which the court of appeals granted on September 18, 2024. The following day, WEC filed a petition to bypass the court of appeals, which we granted on September 20, 2024.

In the circuit court ruling under review, the court examined whether Kennedy had satisfied the criteria for issuing a temporary injunction. A temporary injunction may be granted if: (1) the movant is likely to suffer irreparable harm if an injunction is not issued; (2) the movant has no other adequate remedy at law; (3) an injunction is necessary to preserve the status quo; and (4) the movant has a reasonable probability of success on the merits. *Serv. Emps. Int'l Union, Loc. 1 v. Vos*, 2020 WI 67, ¶93, 393 Wis. 2d 38, 946 N.W.2d 35. The circuit court noted that a motion for injunctive relief is addressed to the sound discretion of the circuit court. Temporary injunctions are not to be issued lightly; the cause must be substantial. *Werner v. A.L. Grootemaat & Sons, Inc.*, 80 Wis. 2d 513, 520, 259 N.W.2d 310 (1977).

The circuit court focused on the first, third, and fourth temporary injunction factors.[1] Regarding the first factor, the circuit court concluded that Kennedy had not demonstrated irreparable harm since Kennedy had voluntarily submitted his nomination papers and declaration of candidacy, thereby choosing to place his name before the voters. The circuit court also pointed to the fact Kennedy had simultaneously claimed harm in some states from not being removed from the ballot and harm in other states from not being placed on the ballot. On the other side of the balance, the circuit court noted the harm that would be inflicted on the public if the requested injunction were granted, including the high cost of reprinting ballots or the logistical problems in conducting an election with ballots on which stickers were placed to obscure Kennedy's name, as he requested. While the circuit court did not rely solely on this court's decision in *Hawkins v. WEC*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877, it said it was mindful of the admonition there that court orders issued during or close to elections can cause harm to the public in the form of voter confusion or an incentive for voters to refrain from voting. The circuit court further determined that Kennedy's requested injunction would alter the status quo and grant him the ultimate relief he sought in his petition, rather than maintain the status quo. *See School District of Slinger v. Wis. Interscholastic Athletic Ass'n*, 210 Wis. 2d 365, 373, 563 N.W.2d 585 (Ct. App. 1997) ("The purpose of 'a temporary injunction is to *maintain the status quo*, not to change the position of the parties or *compel the doing of acts which constitute all or part of the ultimate relief sought.*' *Codept, Inc. v. More-Way North Corp.*, 23 Wis. 2d 165, 173, 127 N.W.2d 29, 34 (1964) (emphasis added)."). With respect to the likelihood of success on the merits of Kennedy's claim, the circuit court agreed with WEC's interpretation of WIS. STAT. § 8.35(1) that once a candidate has submitted nomination papers and a declaration of candidacy that meet the required qualifications to be on the ballot, the candidate's name must be placed on the ballot, unless the candidate dies prior to the election. The circuit court further concluded that Kennedy's claims of constitutional violations of his equal protection and free speech rights lacked legal merit, which meant that Kennedy had no likelihood of success on the merits. Considering all of these factors, the circuit court denied the motion for a temporary injunction.

---

[1] Regarding the second factor, there appears to be no dispute that money damages would not be an adequate remedy for Kennedy's alleged harm. *See Sprecher v. Weston's Bar, Inc.*, 78 Wis. 2d 26, 50, 253 N.W.2d 493, 504 (1977).

In this appeal our task is not to decide the merits of the case, but simply to review whether the circuit court properly exercised its discretion in denying the requested temporary injunction. *Serv. Emps. Int'l Union*, 393 Wis. 2d 38, ¶93 (circuit court's decision to grant or deny a motion for a temporary injunction is reviewed for an erroneous exercise of discretion). We will sustain a discretionary decision as long as the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898.

As the party challenging the circuit court's exercise of discretion, Kennedy has the burden of demonstrating an erroneous exercise of discretion. *See Colby v. Colby*, 102 Wis. 2d 198, 207–08, 306 N.W.2d 57 (1981). The challenger must demonstrate that the circuit court did not examine the relevant facts, apply a proper standard of law, or reach a conclusion that a reasonable judge could reach by applying a demonstrated rational process. We conclude that he has failed to satisfy this burden.

It is worth pointing out that, in addition to the case law that places the burden of demonstrating an erroneous exercise of discretion on the appellant, the court of appeals' order granting leave to appeal twice explicitly directed Kennedy's counsel to address the merits of his appeal in his appellate briefs, as well as to answer specific questions posed by the court of appeals. *Kennedy v. WEC*, No. 2024AP1872, unpublished order at 2 (Wis. Ct. App. Sept. 18, 2024) ("Granting Kennedy's leave petition now will allow briefing on the merits of Kennedy's claim to commence immediately—specifically, whether the circuit court erred by denying Kennedy's motion for a temporary injunction."); *id.* at 3 ("In addition to whatever arguments the parties wish to make in their briefs on whether the circuit court erred by denying Kennedy's request for a temporary injunction, the parties shall address the following questions in their briefs: . . . . ").

Despite this additional admonition from the court of appeals, Kennedy's appellate briefs fail to develop arguments showing an erroneous exercise of discretion. We focus initially on the fourth injunction factor— whether Kennedy has demonstrated that the circuit court erred in concluding that he lacked a reasonable probability of success on the merits. First, we note that Kennedy's appellate briefs omit any argument that the circuit court misinterpreted WIS. STAT. § 8.35(1). While Kennedy's appellate briefs do mention his constitutional arguments (equal protection, free

speech, and freedom of association) in cursory terms, they fail to develop those arguments to even a minimal standard sufficient for us to consider their merits. Kennedy's appellate briefs focus primarily on the additional questions posed by the court of appeals, but they wholly fail to provide legal arguments on the merits of his constitutional claims, supported by citation to legal authority, from which we could make a legal determination as to whether the circuit court erred in finding them to be without merit.[2] The inadequacies of Kennedy's appellate briefs therefore render us unable to perform the required review of the circuit court's exercise of discretion with respect to the fourth factor. *See Southwest Airlines Co. v. DOR,* 2021 WI 54, ¶32 n.10, 397 Wis. 2d 431, 960 N.W.2d 384 ("Further, Southwest's due process and equal protection arguments are undeveloped, and we generally do not address undeveloped arguments." (citation omitted)); *Parsons v. Associated Banc-Corp,* 2017 WI 37, ¶39 n.8, 374 Wis. 2d 513, 893 N.W.2d 212 ("'[W]e do not usually address undeveloped arguments,' and we will not do so here." (alteration in original) (citation omitted)).

The inadequacy of Kennedy's briefs on the fourth factor also impact our ability to review the first factor regarding whether Kennedy will suffer any irreparable harm in the absence of a temporary injunction. His claims of harm are based on his alleged constitutional violations. Since he does not provide us a sufficient basis to assess those claims, we cannot determine whether the circuit court erred in finding that he will not suffer irreparable harm in these circumstances.

Having failed to demonstrate error by the circuit court on both the probability of success on the merits and the presence of irreparable harm, it is unnecessary to address the other factors. We conclude that Kennedy has failed to satisfy his burden of demonstrating an erroneous exercise of discretion. We emphasize that we are not making any legal determinations on our own regarding the claims made by Kennedy and we are not agreeing with the circuit court's legal conclusions on those claims. We simply are unable to make such determinations, given the inadequate briefing presented to us. Consequently, because there is no basis in this appeal on which we could determine that the circuit court erroneously exercised its

---

[2] It is worthwhile to note that, after we granted the petition for bypass and Kennedy filed a motion for oral argument in which he lamented that WEC's response brief had addressed the merits of his claims, we gave Kennedy's counsel extra time to file an amended and longer reply brief.

discretion, we must affirm the circuit court's order denying Kennedy's motion for a temporary injunction.

The order of the circuit court denying the motion for temporary injunction is affirmed.

REBECCA GRASSL BRADLEY, J., with whom ANNETTE KINGSLAND ZIEGLER, C.J., joins, concurring.

Robert F. Kennedy Jr. withdrew his candidacy and requested his name not appear on the ballot—before any ballots were approved or printed. WEC refused, fomenting voter confusion in a battleground state that could decide who will be the next President of the United States. Under state statutes, different rules apply to major party candidates, triggering colorable federal constitutional claims. *See, e.g.*, WIS. STAT. § 8.35(1). The manner in which the case is postured places the court in the position of not deciding the merits, but reviewing what is a circuit court's discretionary decision to deny a request for an injunction. This court concludes the constitutional arguments are insufficiently developed, preventing us from determining whether the circuit court erred in rejecting them. I do not disagree, but the timelines under which WEC—and this court—operate hamstring candidates in Kennedy's situation, leaving little time to brief and argue substantial issues lest this court ultimately invoke the doctrine of laches against a party for any delay. *See, e.g.*, *Trump v. Biden*, 2020 WI 91, ¶¶13-22, 394 Wis. 2d 629, 951 N.W.2d 568.

Kennedy could have filed an original action petition with this court rather than proceeding in circuit court, but this court's decisions to grant or deny original action petitions lack predictable standards, leaving parties to guess the right avenue for challenging WEC's decisions. *See, e.g.*, *Trump v. Evers*, No. 2020AP1971, unpublished order (Wis. Dec. 3, 2020); *Wis. Voters Alliance v. Wis. Elections Comm'n*, No. 2020AP1930, unpublished order (Wis. Dec. 4, 2020); *Clarke v. Wis. Elections Comm'n*, 2023 WI 70, 995 N.W.2d 779; *Hawkins v. Wis. Elections Comm'n*, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877; *Phillips v. Wis. Elections Comm'n*, 2024 WI 8, 410 Wis. 2d 386, 2 N.W.2d 254. Proceeding in the circuit court first leaves a party with less time for meaningful appellate review. Filing an original action risks wasting time that could have been spent litigating in circuit court.

The ramifications in this case are immense. Important constitutional claims go unreviewed. Voters may cast their ballots in favor of a candidate who withdrew his candidacy, thereby losing their right to cast a meaningful vote. Ballots listing a non-candidate mislead voters and may skew a presidential election. In this case, the damage to voter participation in electoral democracy is real.